CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 1 0 2009

JOHN F. CORCORAN, CLERK
BY:
         /s/ J. Clott
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RALEIGH RADIOLOGY, INC., | ) |
| | ) Civil Action No. 7:09-CV-00334 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| EGGLESTON & EGGLESTON, P.C., et al., | ) United States District Judge |
| | ) |
| Defendants. | ) |

Raleigh Radiology, Inc. ("RRI") filed this diversity action against Eggleston & Eggleston, P.C. ("E&E"), Richard B. Eggleston IV, and Patrcia E. Eggleston on August 6, 2009. The complaint asserts six claims. The case is presently before the court on the defendants' motion to dismiss Counts Two and Three of the plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the defendants' motion to dismiss will be granted in part and denied in part.

**I.    Background**

The plaintiff, RRI, is a West Virginia corporation with its principal place of business located in Beckley, West Virginia. RRI provides diagnostic radiology services in southern West Virginia. Defendant E&E is a Virginia professional corporation with its principal place of business located in Roanoke, Virginia. E&E provides practice management services to mid-size and large medical practices in Virginia and West Virginia. Defendants Richard Eggleston and Patricia Eggleston are citizens of Virginia.

According to the complaint, on January 21, 1997, RRI and E&E entered into an agreement whereby E&E agreed to perform various practice management services for RRI. The term of the

agreement was three years. On January 1, 2002, RRI and E&E entered into another agreement, the Practice Management Services Agreement (the "Agreement"), under which E&E was to perform certain practice management services in exchange for a monthly fee. The initial term of the Agreement was for three years, but thereafter the Agreement renewed automatically for consecutive one-year terms. RRI alleges that it terminated the Agreement for cause effective May 31, 2009.

Pursuant to the Agreement, E&E was to perform "Reimbursement Management Services" and "Financial Management Services" (collectively, the "Services"). The Services are defined by two exhibits, Exhibit 2(a) and Exhibit 2(b), attached to the Agreement. In connection with the Financial Management Services, E&E had full access to, and control of, RRI's bank accounts.

The fees to be paid by RRI to E&E for services performed are set forth in Section 7 of the Agreement. Section 7 of the Agreement states in pertinent part as follows:

> 7. **Fees and Payment.** Practice agrees to make payment for Services rendered during the Term of this Agreement as set forth in this Section 7.
> (a)   Reimbursement Management Services and Financial Management Services.
> (i)   During the first year of the Term, Practice shall pay Manager a monthly fee for Reimbursement Management Services and Financial Management Services in the amount of $5.40 per radiology procedure performed/interpreted by Practice. Payment for such Services shall be made on the last day of each month. In the event that the Effective Date and/or the date of the termination or expiration of the Agreement take place on a date other than the first of the month, fees payable under this Section 7(a) shall be determined by the Manager on a pro rata basis, invoiced to the Practice and payable within ten (10) days of the date of invoice.
> (ii)   Commencing on the date that is one year from the Effective Date, and thereafter on the first day of each succeeding year of the Term, monthly fees payable for Reimbursement Management Services and Financial Management Services under this Section 7(a) shall increase automatically by an amount equal to two percent (2%) of the monthly fees payable for such Services during the immediately preceding year.
> . . .

RRI alleges that, in violation of the Agreement, E&E charged RRI monthly fees greater than the fees authorized pursuant to the Agreement; that E&E charged RRI for radiological procedures which were

2

not performed by RRI; and that E&E improperly charged additional amounts for services which were already covered under the scope of the Services to be performed by E&E. (Compl. ¶¶ 17-19.)

RRI alleges that it became concerned that E&E was not performing as required under the Agreement, and that, on or about April 22, 2009, it engaged a forensic accountant to conduct an inspection of E&E's books and records relating to the services performed by E&E under the Agreement. According to the complaint, that inspection revealed that E&E repeatedly overcharged RRI and that E&E either failed to maintain adequate records or withheld records from RRI and its auditor. RRI alleges that, as professional CPAs, Richard Eggleston and Patricia Eggleston owed RRI a duty of loyalty and fidelity, and were obligated to discharge their responsibilities under the Agreement using reasonable care and diligence. RRI alleges that they breached their duties to RRI and purposefully acted to conceal E&E's misconduct.

On August 6, 2009, RRI filed its complaint asserting six claims. Count One of the complaint alleges that E&E breached its contract with RRI. Count Two of the complaint alleges that E&E has been unjustly enriched. Count Three of the complaint alleges that E&E converted RRI's funds. Count Four of the complaint alleges that all defendants breached their fiduciary duty to RRI. Count Five of the complaint alleges that all defendants committed professional malpractice. Count Six of the complaint alleges that RRI is entitled to a financial accounting regarding the Services.

On August 31, 2009, the defendants filed their answer and also filed a counterclaim, asserting claims of breach of contract in Count One and quantum meruit/unjust enrichment in Count Two. That same day, the defendants also filed a motion to dismiss Counts Two and Three of the plaintiff's complaint. On September 28, 2009, the plaintiff submitted its brief in opposition. Neither party has requested a hearing.

## II. Discussion

### A. Standard

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

The plaintiff in this case has attached the Agreement as an exhibit to its complaint. The court may properly consider this document without converting the motion to dismiss to one for summary judgment. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (holding that a court may consider certain extrinsic evidence in ruling on a 12(b)(6) motion if it was "integral to and explicitly relied on in the complaint" and the opposing party does not challenge its authenticity).

### B. Motion to Dismiss Count Two of the Complaint

The plaintiff alleges in Count Two of its complaint that "E&E substantially overcharged RRI

under the Agreement" and that "E&E has been unjustly enriched by these overcharges." (Compl. ¶ 28.) The defendants respond that there can be no recovery because an express contract exists between the parties and because the allegations in Count Two contemplate the existence of a contract.

It is well settled that under Virginia law "there can be no recovery in quantum meruit where a valid express contract between the parties exists." See Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp., 961 F.2d 489, 491 (4th Cir. 1992) (noting that the "[p]arties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms"); Vollmar v. CSX Transp., Inc., 705 F. Supp. 1154, 1176 (E.D. Va. 1989); see also Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc., No. 5:07-CV-24, slip op. at *16 (W.D. Va. Aug. 31, 2007).

In this case, there was an express, written agreement between the parties with regard to the subject matter in question, that is, the fees to be charged for services rendered by E&E. The defendants admit the validity of the contract. (Answer ¶ 24.) Moreover, the plaintiff's basis for its unjust enrichment claim is that E&E improperly charged it for services already covered "under the Agreement." (Compl. ¶ 19, 28.) As such, the plaintiff may not pursue a claim of unjust enrichment, and the court will grant the defendants' motion to dismiss Count Two of the complaint.

C.   **Motion to Dismiss Count Three of the Complaint**

RRI asserts that E&E converted its funds when "E&E wrongly exercised authority over RRI's funds" by improperly charging RRI for services performed by E&E. (Compl. ¶ 32.) The defendants assert two bases for dismissal of Count Three, each of which will be addressed in turn.

1.   **Conversion of Funds**

Virginia law defines the tort of conversion as any distinct act of dominion or control wrongfully

exerted over the property of another, either inconsistent with, or in denial of, the owner's rights. Hairston Motor Co. v. Newsome, 480 S.E.2d 741 (Va. 1997).

The defendants argue that RRI's conversion claim must be dismissed because money or funds cannot be the subject of conversion. In support of this contention, the defendants cite to Arias v. Jokers Wild, Inc., in which the Court stated that "money cannot be the subject of conversion, only tangible personal property may be converted." 73 Va. Cir. 281, 301 (Fairfax Cty. Cir. Ct. 2007) (citing United Leasing Corp. v. Thrift Ins. Corp., 440 S.E.2d 902 (Va. 1994). In the case upon which that Court relied, United Leasing Corp., the Supreme Court of Virginia stated that "[i]n general, a cause of action for conversion applies only to tangible property" but that "many courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." 440 S.E.2d at 906. The Court held that the "right" asserted in that case was a right to obtain an adjudication that the defendant must honor a forged stock certificate, which was insufficient to support a claim for conversion. Id.

In a later case relevant to the issue at hand, the Supreme Court of Virginia held that proceeds of a settlement action could properly be the basis of a conversion action. PGI, Inc. v. Rathe Productions, Inc., 576 S.E.2d 438, 443 (Va. 2003). The Court stated that "the jury was entitled to find that [the defendant] without justification wrongfully withheld settlement proceeds from [the plaintiff]" and that "[n]one of the elements to sustain a cause of action for conversion are missing." Id.; see also Pre-Fab Steel Erectors, Inc. v. Stephens, No. 6:08-CV-39, slip op. at *35-36 (W.D. Va. April 1, 2009) (stating that "[a]s a rule, a wronged party can recover money converted if the possessor did not receive it in good faith or for valuable consideration, even if the money has changed forms.")

In the present case, the plaintiff alleges that "E&E wrongly exercised authority over RRI's funds

by improperly charging RRI for the Services" and that the "funds over which E&E wrongly exercised its authority were deposited into E&E's bank account." (Compl. ¶ 32.) Unlike the situation in United Leasing Corp., the plaintiff's claim here indicates that it had a right to its funds at the moment of the alleged conversion. Because this is sufficient to state a cause of action under Virginia law, the court will deny the defendants' motion to dismiss on this ground.

2.   **Independent Tort Claim**

Defendants also argue that the plaintiff's conversion claim fails to allege an independent tort claim. Virginia law generally does not permit recovery on tort claims when the duty that is breached is based on a contractual relationship. "Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages that were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts." Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 374 S.E.2d 55, 58 (Va. 1988).

Plaintiffs have, however, been permitted to assert conversion claims in conjunction with breach of contract claims under Virginia law. See, e.g., Rathe Productions, Inc., 576 S.E.2d at 443 ("[a] cause of action for conversion lies independent of an action in contract and may provide a separate basis, distinct from the contract, upon which one partner may sue another"); see also Stephens, No. 6:08-CV-39, slip op. at *33-34 (allowing a conversion claim to stand regardless of whether a contract exists because "it is clear that Plaintiff is not merely asserting another breach of contract masked as a conversion claim, but is alleging that the defendants wrongfully converted Plaintiff's money"); Combined Ins. Co. of America v. Wiest, 578 F. Supp. 2d 822, 832-33 (W.D. Va. 2008) (concluding "'the duty not to convert the property of another for one's own purposes' exists in the

absence of any contract, and thus provides the basis for an 'independent tort from the contract claims' arising out of the parties' relationship") (citing Hewlette v. Hovis, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004)).

In this case, the plaintiff has alleged that E&E wrongfully exercised authority over plaintiff's funds and that E&E deposited those funds into its own bank account. The plaintiff's claim for conversion may stand regardless of whether a contract exists because the common law duty not to convert the property of another for one's own purposes provides the basis for an independent tort action. As such, the defendants' motion to dismiss the conversion claim must be denied on this ground as well.

### III. Conclusion

For the foregoing reasons, the court concludes that the defendants' motion to dismiss shall be granted in part and denied in part.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 10th day of November, 2009.

*/s/ Glen Conrad*
United States District Judge